IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JESSICA L. DELEON,

       Plaintiff,

vs.                                                                                                             No. CIV-02-1379 JC/RLP

NORTHROP GRUMMAN SYSTEMS
CORPORATION, and
WATEROUS COMPANY,

       Defendants,

and

NORTHROP GRUMMAN SYSTEMS
CORPORATION,

       Defendant/Third Party Plaintiff,

v.

HENRY G. DIETZ CO., INC.,

       Third Party Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Waterous Company's Motion for Summary Judgment on Plaintiff's Claim for Punitive Damages, filed April 27, 2004 (*Doc. 153*). Having reviewed the Motion, memoranda, and the relevant authority, the Court finds the motion not well-taken and it is, therefore, denied.

**I.**       **Background**

Plaintiff was a volunteer firefighter in Belen, New Mexico when this cause of action arose.

On June 11, 2001, Plaintiff was among a group of firefighters responding to a fire in Belen. The fire truck used on that day was a Firecat Pumper ("Firecat"), manufactured by Defendant/Third Party Plaintiff Northrop Grumman Systems Corporation ("Grumman")[1] and purchased by the Belen Fire Department in March of 1989. Defendant Waterous Company ("Waterous") manufactured the water pump and pump system installed in the Firecat. The Firecat was also equipped with an automatic transmission.

While located in the vicinity of the fire, with Plaintiff on its catwalk, the Firecat became "runaway," meaning it did not remain stationary while the operator increased engine speed to begin pumping water, but instead moved away unattended. The unexpected movement came as a result of the Firecat's engine being in "ROAD mode" when the operator believed it to be in "PUMP mode." Plaintiff attempted to enter the driver's side door of the moving Firecat to reach the engine shutdown switch within the cab. In her effort, Plaintiff became caught between the cab door of the moving Firecat and a pipe fence. Plaintiff suffered severe injuries.

Plaintiff's Second Amended Complaint for Personal Injury, filed November 20, 2003 (*Doc. 76*), includes claims sounding in strict liability and negligence (Counts I, II and III). Plaintiff also seeks punitive damages, asserting that Defendants' conduct was willful, reckless and wanton (Count IV). Defendant Waterous presently moves the Court for summary judgment on Plaintiff's claim for punitive damages against it.

---

[1]The Court notes that Defendant Northrop Grumman Systems Corporation did not itself manufacture the subject Firecat or any of its components. Grumman is named in the Complaint and is financially responsible for any judgment that may be entered as successor corporation to now-defunct Grumman Emergency Products ("GEP"), which was involved in designing, manufacturing, and marketing of the subject Firecat.

## II. <u>Legal Standard</u>

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). For purposes of a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party. *Id*. The moving party has the initial burden of showing that there is no genuine issue of material fact. *Id.* at 256. When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying "a lack of evidence for the non movant on an essential element of the non movant's claim." *Adler v. Wal-Mart Stores, Inc*., 144 F. 3d 664, 671 ( 10th Cir. 1998).

Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson,* 477 U.S. at 248, 256. To meet this burden, the non-movant must specify evidence in the record and demonstrate the precise manner in which that evidence supports its claims. *Gross v. Burggraf*, 53 F.3d 1531, 1546 (10th Cir. 1995). An issue is material only if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248.

## III. <u>Discussion</u>

Defendant Waterous asks the Court to enter summary judgment in its favor on Plaintiff's claim for punitive damages, asserting that Plaintiff "can point to no record evidence establishing the existence of the required culpable mental state to support" such claim. Pl's Mot. at 1-2. As a

preliminary matter, the Court finds Waterous' characterization of what may constitute a culpable mental state in a tort action in New Mexico flawed. Specifically, Waterous cites *Paiz v. State Farm Fire and Casualty Co.*, 118 N.M. 203, 212 (1994), for the proposition that punitive damages are inappropriate for gross negligence under New Mexico law. This is a misstatement of the *Paiz* holding as this Court reads it and, more importantly, as the Tenth Circuit read it in *Smith v. Ingersoll-Rand*, 214 F.3d 1325 (10th Cir. 2000). While it is true that the *Paiz* court rejected gross negligence as the basis for an award of punitive damages, the stricter standard announced in *Paiz* was limited to contract cases. In that case, the court stated that punitive damages in a contract case cannot be predicated solely on gross negligence, but may only arise from conduct that is malicious, fraudulent, oppressive, or committed recklessly or with wanton disregard for the plaintiff's rights. *Paiz v. State Farm,* 118 N.M. at 211. The court explained that punitive damages serve the limited purpose of punishing and deterring certain conduct, and, therefore, may only be awarded based on evidence of a culpable mental state. *Id. See also*, *In re Sloan v. State Farm Mutual Automobile Ins. Co.*, 2004 NMSC 4,14, 17 (Jan. 2004) citing *McGinnis v. Honeywell, Inc.*, 110 N.M. 1, 9 (1990). In tort law, however, there is no equivalent case expressly rejecting gross negligence as a ground for punitive damages.[2] *See Torres v. El Paso Elec. Co.*, 127 N.M. 729, 740 (1999) ("...we specifically declined to reach the issue [of gross negligence as a basis for punitives] in the context of a negligence action in *Clay*, 118 N.M. at 270 n.2, 881 P.2d at 15 n.2. Our present jury instructions omit gross negligence as conduct warranting punitive damages. *See* UJI 13-1827 NMRA 1999...[W]e conclude that it is unnecessary to resolve the issue of gross negligence as a basis for punitive damages in negligence

---

[2]Notably, however, the New Mexico Supreme Court adopted a committee recommendation to exclude gross negligence from the relevant jury instruction in 1989. N.M. U.J.I. Civ. 13-1827 Committee commentary.

claims and once again decline to reach it.")

That said, Count IV of Plaintiff's Second Amended Complaint alleges, "[t]he conduct of defendants described above was *willful, reckless, and wanton* entitling plaintiff to an award of punitive damages..." Pl's Second Am. Compl. at 6 (emphasis added). Consideration of gross negligence aside, when determining whether evidence is sufficient to establish a culpable mental state, courts must bear in mind that the limited purpose of punitive damages is "'punishing a wrongdoer,' and deterring future tortious conduct." *Torres v. El Paso Elec. Co.*, 127 N.M. at 740; *Clay v. Ferrellgas, Inc.*, 118 N.M. 266, 269 (1994). The terms willful, reckless, and wanton are defined as follows: "Willful conduct is the intentional doing of a wrongful act with knowledge that the act was wrongful. Reckless conduct is the intentional doing of an act with utter indifference to the consequences. Wanton conduct is the doing of an act with utter indifference to or conscious disregard for a person's [rights] [safety]. N.M. U.J.I. Civ. 13-1827.

Waterous offers various undisputed material facts in support of its motion. First, Waterous directs the Court to the testimony of several of Plaintiff's witnesses, one of whom is well-acquainted with personnel at Waterous, has sold Waterous equipment, and consulted with Waterous in relation to prior litigation. French Depo., Waterous' Mot., Ex. A: 54:20-25; 55:1-13; 56:8-13. French opined that Waterous is a reputable company "trying its best" to make a safe product. *Id.* Plaintiff counters by directing the Court to its evidence indicating that Waterous (1) knew of problems with its pump shift system as far back as the early 1970's, and (2) knew that redesigning was the only way to eliminate the serious danger posed by those problems. Resp. at 5-6. Consequently, there is a genuine dispute regarding whether Waterous was actually "trying its best" to ensure safety and whether "its best" would exempt it from liability for punitive damages under the circumstances.

5

Instead, a reasonable jury could find, for example, that failure to redesign constitutes "utter indifference or conscious disregard for a person's safety." N.M. U.J.I. 13-1827.

Further expert witness testimony cited by Waterous establishes the undisputed fact that Waterous and the Belen truck were at all times compliant with National Fire Protection Association ("NFPA") standards. Mot. at 2-3: Ex. A: This argument fails to advance Waterous' motion, however, as it is well-settled that industry standards are often minimums, as NFPA standards are, and evidence of compliance is, therefore, admissible and instructive but not dispositive on legal duties or standards of care. Peters Depo., Pl's Resp., Ex. 8: 23:5-7; White Depo., Pl's Resp., Ex. 9:28 :5-7; *Brooks v. Beech Aircraft Corp.*, 120 N.M. 372, 381 (1995) (holding that evidence of compliance with industry standards is relevant to whether the manufacturer was negligent or whether the product poses an unreasonable risk of injury, but should not conclusively demonstrate whether the manufacturer was negligent or the product defective). Thus, regardless of compliance with NFPA, there remains a genuine dispute regarding whether Waterous breached a duty owed to Plaintiff and in so doing acted with sufficient mental culpability to give rise to liability for punitive damages.

Waterous next argues that incorporating a green "okay to pump" light system in its engines beginning in 1976 confirms Waterous' desire to ensure the safety of end users and that Waterous had no report of that system failing prior to its installation in the Belen truck. Waterous' Mot. at 3, Ex. D; Ex. E: 4:10-15, 5:1-3, 18:20-25, 19:20-25. A reasonable jury could infer from this set of facts, however, that Waterous' introduction of the green light system is more significant in its tendency to show that Waterous had notice of an existing, dangerous situation involving its product as early as 1976 and Waterous introduced the green light system rather than endeavoring to redesign the product and eliminate the danger. Additionally, Plaintiff offers expert opinion testimony to the effect that

6

implicit in all warnings and cautions is an acknowledgment on the part of the manufacturer that a potential hazard exists. White Depo. at pp. 42-44. Further, Plaintiff offers evidence of the generally accepted design principals and their order of priority known as "design it out, guard, and warn." Pl's Resp., Ex. 1:11-12; Ex. 2:105; Ex.3:59:7 to 60:16; Ex. 4:18   Again, because Plaintiff's evidence supports a finding that Waterous introduced the green light system to address a known problem with the pump shift mechanism instead of redesigning the system in accordance with the common principles of risk-hazard analysis, a reasonable jury could determine that Waterous acted with a conscious disregard for the safety of Plaintiff.[3]

Finally, the Court is least persuaded that summary judgment disposition is appropriate on Plaintiff's claim for punitive damages against Waterous by the following lines of argument: 1) that Waterous did not have reports of any problems with the Belen Firecat *in particular*[4]; 2) that Waterous subscribes to industry publications and assigns certain employees to read them and highlight "areas of importance relevant to responding to customer needs;"[5] 3) that Waterous has a "routine practice of reviewing various web sites to proactively identify any service situation or service-related problem with which it can assist customers;" and 4) that many Waterous employees serve as volunteer firefighters in their respective communities. Pl's Mot. at 3-4.  None of these facts assist Waterous in showing a complete lack of supporting evidence of mental culpability in the face of

---

[3]This is particularly true because the risk of danger posed by the product or the tortfeasor's conduct is a valid consideration in determining the level of recklessness necessary to evince a culpable mental state. *Clay v. Ferrellgas, Inc.,* 118 N.M. 266, 269 (1994).

[4]Plaintiff offers ample evidence that Waterous knew of problems with the very same type of truck, though not the actual Belen Firecat.

[5]This information is of questionable relevance here, as no discussion is had in Waterous' briefs regarding what, if anything, is done with such information, post-highlighting.

evidence indicating that Waterous knew of problems with the pump shift system as early as 1976 and chose not to redesign.

## IV.     Conclusion

In summary, Waterous has not carried its burden.  Viewing all disputed facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has produced substantial, competent summary judgment evidence from which a reasonable jury could find sufficient mental culpability to support an award of punitive damages against Defendant Waterous.  Therefore, Waterous' motion is denied.

Wherefore,

**IT IS ORDERED** that Waterous Company's Motion for Summary Judgment on Plaintiff's Claim for Punitive Damages, filed April 27, 2004 (*Doc. 153*), is denied.

Dated June 15, 2004.

_____
SENIOR UNITED STATES DISTRICT JUDGE