**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

JESSICA L. DELEON,

Plaintiff,

vs. No. CIV-02-1379 JC/RLP

NORTHROP GRUMMAN SYSTEMS CORPORATION, and WATEROUS COMPANY,

Defendants,

and

NORTHROP GRUMMAN SYSTEMS CORPORATION,

Defendant/Third Party Plaintiff,

v.

HENRY G. DIETZ CO., INC.,

Third Party Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on *Northrop Grumman Systems Corporation's Motion In Limine Regarding Settlement with Third-Party Defendant Henry G. Dietz Company and Supporting Brief*, filed May 14, 2004 (*Doc. 182*). Having considered the motion, the parties' submissions, and the relevant authority, the Court finds the motion well-taken and it is, therefore, granted.

## I. Background

Plaintiff was a volunteer firefighter in Belen, New Mexico when this cause of action arose. On June 11, 2001, Plaintiff was among a group of firefighters responding to a fire in Belen. While located in the vicinity of the fire, with Plaintiff on its catwalk, the Belen fire department's truck ("Firecat") became "runaway," meaning it did not remain stationary while the operator increased engine speed to begin pumping water, but instead moved away unattended. The unexpected movement came as a result of the Firecat's engine being in "ROAD mode" when the operator believed it to be in "PUMP mode." Plaintiff attempted to enter the driver's side door of the moving Firecat to reach the engine shutdown switch within the cab. In her effort, Plaintiff became caught between the cab door of the moving Firecat and a pipe fence. Plaintiff suffered severe injuries.

The Firecat was manufactured by Defendant/Third Party Plaintiff Northrop Grumman Systems Corporation ("Grumman") and purchased by the Belen Fire Department in March of 1989. Defendant Waterous Company ("Waterous") manufactured the water pump and pump system installed in the Firecat. The Firecat was also equipped with an automatic transmission. Third-Party Defendant Henry Dietz Company ("Dietz") manufactured a component part on the Firecat known as a pressure differential switch that was incorporated into another component part, known as the governor, manufactured by Grumman.

Plaintiff's Second Amended Complaint for Personal Injury, filed November 20, 2003 (*Doc. 76*), includes claims sounding in strict liability and negligence (Counts I, II and III) against Grumman and Waterous. Plaintiff also seeks punitive damages, asserting that Defendants' conduct was willful, reckless and wanton (Count IV). Grumman filed its Third Party Complaint against Dietz on August 8, 2003 (*Doc. 39)*. Notwithstanding Grumman's contention that neither the differential switch nor


the governor contributed to Plaintiff's accident, Grumman's claim against Dietz was resolved.[1] In the motion presently before the Court, Grumman seeks a pre-trial ruling disallowing any evidence relating to the Grumman-Dietz settlement agreement.

## II. Legal Standard

The threshold inquiry for admissibility of evidence is that it be relevant, meaning it must have a tendency to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401; *Smith v. Ingersoll-Rand Co.*, 214 F,3d 1235, 1246 (10th Cir. 2000). Evidence is relevant "if it will assist the jury in determining the existence of any fact of consequence." *Dauber v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591-95 (1993).

Evidence that is determined to be relevant may be properly excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed.R.Evid. 403. Finally, Federal Rule of Evidence 408 declares evidence of compromise or offers to compromise, and statements made in compromise negotiations, inadmissible for the purpose of proving liability for or invalidity of a claim. Fed.R.Evid.408.

## III. Analysis

The Court finds merit in Grumman's argument that it is difficult to imagine how the Grumman-Dietz settlement might bear meaningfully on any of the issues likely to be raised in the trial of this matter, which issues include negligence, strict products liability (defect or unreasonable dangerousness), and amount or apportionment of damages. The Court also agrees with Grumman's assessment that even if information pertaining to the settlement should become relevant in some

[1] The Court awaits receipt of dismissal documentation.

limited way, any minimal probative value it may have would surely be outweighed by the great likelihood that a jury would consider the settlement to signify a concession of liability and an admission of fault on the part of Grumman. Additionally, any information regarding the amount of the settlement would serve no useful purpose at trial and could serve only to create prejudice.

## IV. Conclusion

In summary, the Court finds no relevance in the fact of or details regarding the settlement reached by Grumman and Dietz. Further, even if such information became relevant at trial, its probative value would be outweighed by the risk of prejudice posed if the jury were to hear it. Finally, purpose and spirit of Rule 408 in facilitating settlement is preserved by disallowing evidence of the Grumman-Dietz settlement in this matter. Therefore, barring unforseen development of a valid purpose and substantial need for evidence of the Grummen-Dietz settlement at trial, such evidence will be excluded.

Wherefore,

**IT IS ORDERED** that *Northrop Grumman Systems Corporation's Motion In Limine Regarding Settlement with Third-Party Defendant Henry G. Dietz Company and Supporting Brief*, filed May 14, 2004 (*Doc. 182*) is granted.

DATED June 16, 2004.

SENIOR UNITED STATES DISTRICT JUDGE

5