## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JESSICA L. DELEON,

       Plaintiff,

vs.                                           No. CIV-02-1379 JC/RLP

NORTHROP GRUMMAN SYSTEMS
CORPORATION, and
WATEROUS COMPANY,

       Defendants,

and

NORTHROP GRUMMAN SYSTEMS
CORPORATION,

       Defendant/Third Party Plaintiff,

v.

HENRY G. DIETZ CO., INC.,

       Third Party Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court for consideration of several pending motions *in limine*. Trial of this case is set to commence on Monday, July 19, 2004. A hearing is scheduled for July 12, 2004, at which time the parties will be allowed oral argument on all remaining motions *in limine*. Regarding the motions decided below, however, the Court finds that the issues have been sufficiently briefed such that oral argument would not assist the Court in making its determinations.

1.      *Defendant Northrop Grumman's Pre-Trial Management Motion* (*Doc. 183*)

Defendant Northrop Grumman Systems Corporation ("Grumman") moves the Court, pursuant to Rules 16, 401, and 403 of the Federal Rules of Civil Procedure, "to exclude mention of Northrop Grumman at trial."   Northrop Grumman Systems Corporation's Pre-Trial Management Motion ("Motion"), filed May 14, 2004 (*Doc. 183*) at 11.  It is Grumman's position that hearing the name "Northrop Grumman" will necessarily stimulate jurors to impermissibly consider its tremendous size and wealth, regardless of whether any evidence of such size and wealth is presented at trial.  *Id.* In this way, Grumman asserts, it will suffer extreme prejudice which could not be  cured by instruction from the Court.  *Id.*

The difficulty associated with granting Grumman's broad request is manifest:  Grumman is a named Defendant in this case, its name appears in the case caption, is mentioned in nearly all depositions, and appears on many exhibit documents.   While the Court recognizes an inherent risk that any large corporation will be perceived  to have deep pockets, concealing the identity of a named Defendant from the jury in this case would work great hardship on the Court and all of the parties. Grumman's suggestion otherwise is illogical.

In its Reply Brief, Grumman narrows its original entreat to a request for the following two rulings:   "(1) a determination that it is only derivatively liable, meaning that its sole liability as a successor corporation is to satisfy any judgment that may be entered against Grumman Emergency Products ("GEP"); and (2) that no information regarding Northrop Grumman's size or wealth may be presented to the jury."  Reply at 1.  Grumman's Reply then delves into an argument the Court will not consider at this time--namely that Grumman cannot or should not be held liable for punitive damages solely as a successor corporation to GEP.  That issue is not before the Court on this motion

2

but is, instead, the subject of another pending motion upon which the Court will not yet rule, for it awaits receipt of Grumman's reply.  *See* Northrop Grumman System Corporation's Motion for Partial Summary Judgment on Plaintiff's Punitive Damages Claim ("Mot."), filed May 17, 2004 (*Doc. 190*); Brief in Support (*Doc. 191*); Response in Opposition to Northrop Grumman's Motion for Partial Summary Judgment on Plaintiff's Punitive Damages Claim ("Resp."), filed June 16, 2004 (*Doc. 224*); Stipulated Order Regarding Pre-Trial Motions, filed June 28, 2004 (*Doc. 262* ).

Regarding the Motion presently before the Court, the Court first determines that because the trial has been bifurcated, evidence of Grumman's size and wealth will be disallowed during the initial phase of the trial.[1]  Fed.R.Civ.P.42(b) Bifurcation Order, filed June 28, 2004 (*Doc. 261* ).  Next, the Court will entertain briefing on the question of what evidence shall be admissible during the punitive damages phase of the trial as necessary.  Finally, the Court will provide an appropriate limiting instruction to the jury, which will include:  (1) the nature of Northrop Grumman Systems Corporation's involvement in the litigation; (2) Grumman Emergency Products' role in designing, manufacturing and marketing of the Belen Firecat Pumper, and (3) Northrop Grumman Systems Corporation's status as successor to now-defunct Grumman Emergency Products.[2]

---

[1]  Plaintiff and Grumman are in agreement on this point.  Resp. at 2 ("Certainly, in this event [that the trial is bifurcated], plaintiff will not discuss or seek to present evidence on the size or wealth of Northrop Grumman in the initial phase.").  Regarding the initial phase of the trial, the Court does not share Grumman's scepticism with respect to the jury's ability to understand that liability cannot be based upon size or wealth, regardless of how complex or technical other issues before it will be.  Mot. at 5-6, 8.

[2]The Court also has confidence in the jury's ability to conceptualize the basics of corporate merger and acquisition as they are relevant here.

2.    *Northrop Grumman Systems Corporation's Motion In Limine to Exclude Certain Testimony Regarding the Patent on the Subject Governor* (*Doc. 181*)

Grumman also moves the Court for an order excluding evidence, references and arguments of counsel pertaining to the history of the patent on the Grumman governor.  Northrop Grumman System Corporation's Motion In Limine to Exclude Certain Testimony Regarding the Patent on the Subject Governor ("Motion"), filed May 14, 2004 (*Doc. 181*).  Former Vice-President of GEP Delford D. Bilyeu was designated on the Grumman governor's patent as its inventor.  It has become apparent through discovery in this case that an employee of Grumman Aerospace Advanced Development, Paul Kovich, purportedly developed the predecessor to the Grumman governor but failed to seek a patent on the device because he believed it unpatentable as an application of a prior process and existing technology.  Pl's Resp., Ex. 1 at 24:12-25:3, 63:2-65:5. The governor and differential switch were allegedly developed as part of a nozzle pump operator system for fire trucks equipped with mechanized extension ladders.  Resp., Ex. 3 at 46:16 to 48:13, Ex. 2, 29:11 to 30:25. Several witnesses testified at deposition to their belief that there was a need for a pressure differential switch because, during testing and development of the governor system, it was apparent that a runaway pumper could occur as a result of no pump pressure when there was a failure to complete a shift from "ROAD" mode to "PUMP" mode.

In her strict liability claims, Plaintiff alleges, *inter alia*, that the pressure governor manufactured by Grumman and integrated into the Belen Firecat was defective and posed an unreasonable risk of injury.  Specifically, Plaintiff alleges that the governor should have been effectively "interlocked," meaning the governor should have been rendered incapable of charging the engine when the Firecat's pump transmission was in "ROAD" mode.   It is Plaintiff's further

4

contention that the pressure differential switch on the governor was intended to perform this interlock, fail-safe function but was rendered ineffective when it failed in the closed position. Therefore, Plaintiff argues, evidence pertaining to the history of the patent is substantially relevant to the issues in numerous ways not identified by Grumman in its Motion.

Grumman replies that Plaintiff's Response "is riddled with unfounded conclusions and other obfuscation which Plaintiff hopes will be sufficient to create the illusion that the history and dispute regarding the governor patent is somehow relevant to her case."  Reply at 1.  The Court disagrees. Plaintiff's theory of liability and basis for punitive damages against Grumman rest in large part on her contention that Grumman engaged in "gross misuse of the particular [differential] switch" as an interlock fail-safe device in its governor system, which was incorporated into the Belen Firecat.  Resp. at 2.   Moreover, Plaintiff asserts that Grumman's advertisements represented that its pressure governor incorporated a unique pressure differential switch that would not only be easy to maintain but would stop runaway firetrucks.  Pl's Resp., Ex. 5.  Accordingly, evidence that bears on the initial intended use of the switch, the circumstances under which that initial intended use changed, any testing that was performed on the device for its original intended application and subsequent to the change in that application, and the device's ultimate suitability for use in the Firecat, as described above, is relevant to the issues in this trial.  It follows that evidence of the circumstances surrounding the original invention, why the professed true inventor sought no patent, and how GEP subsequently came to own a patent on the invention all have significant probative value should not be excluded.

3.     *Northrop Grumman Systems Corporation's Motion In Limine to Exclude Certain Testimony Regarding the Alleged Mis-Location of the Pump Shift Indicator Lights (Doc. 203)*

Grumman filed its Motion In Limine to Exclude Certain Testimony Regarding the Alleged

Mis-Location of the Pump Shift Indicator Lights ("Motion") on May 28, 2004 (*Doc. 203*).  Plaintiff filed her Response on June 18, 2004 (*Doc. 243*).  On June 28, 2004 Grumman indicated to the Court that it did not intend to file a Reply in support of its Motion.

The gist of Grumman's Motion is this:  Nathan Godfrey, the operator of the Belen Firecat on the day of the accident, stated unequivocally at deposition that he indeed saw the green pump shift indicator "OK to PUMP" light illuminated prior to making his attempt to pump water.  Mot., Ex. B at 26-28.  Because Mr. Godfrey saw the green status indicator light, it cannot then be accurately said that the location of that light played any role in causing the runaway Firecat.  Mot. at 3.  Therefore, any evidence suggesting that the light should have been placed in a different, perhaps more prominent, position on the truck is rendered wholly irrelevant in this case and could serve only to confuse the already complex issues and prejudice Grumman.  *Id.* at 3-4.

Plaintiff's Response, however, raises issues of possible relevance unidentified by Grumman. In particular, Plaintiff contends that because Plaintiff may argue her alternative theory that Godfrey did not, in fact, see the green "OK to PUMP" light illuminated but instead began his attempt at pumping water absent any perception of the lighted signal to give him the go-ahead, the location of the status light is relevant to the accuracy of Godfrey's contention and ultimately to the viewability of the light by any operator.  In this way, if the accuracy of Godfrey's contention is placed in issue at all, the location of the light becomes relevant.[3]  The Court determines that Plaintiff may explore evidence pertaining to the location of the green indicator lights to flesh out the soundness of Mr. Godfrey's assertion that he saw the light illuminated as well as to show compliance or noncompliance

---

[3]Indeed, of late, Grumman has abandoned its earlier position that the green status light indicated a false positive, aligning itself instead with Defendant Waterous' position that the light was not illuminated and whereby bringing Godfrey's assertion into further contention.

with any relevant regulations, another basis for relevance Plaintiff identifies in her Response.

4.      *Defendant Northrop Grumman Systems Corporation's Motion In Limine Regarding Videotape Re-Creation (Doc. 188)*

Defendant Grumman objects to admission of Plaintiff's Belen Fire Truck Inspection videotape ("tape") as "purport[ing] to be a recreation of aspects of the subject accident" yet failing to meet the "substantial similarity" test established for admissibility of such re-creations and applied in *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434 (10th Cir. 1992) and others.  Mot. at 2.  Plaintiff counters that the videotape is not a re-creation and does not purport to be; therefore, the majority of Grumman's legal arguments are misplaced.  Plaintiff contends that she will offer the tape merely as a visual aid to assist the jury in understanding the expert testimony explaining technical devices and their working relationship to one another, as was held permissible in *Branch v. French*, 638 F.2d 209 (10th Cir. 1981), *Montag v. Honda Motor Co.*, 75 F.3d 1414 (10th Cir. 1996), and *Pandit v. American Honda Motor Co., Inc.*, 82 F.3d 376 (10th Cir. 1996).

Having conducted an *in camera* review of the seven-minute tape on June 28, 2004, the Court finds that the tape does not purport to be anything other than a visual aid, from which Plaintiff may argue her theory.  In sum, the Court agrees with Plaintiff that the tape is more accurately likened to the very type of evidence to which the "substantial similarity" test does not apply--a demonstration of mechanical principles - than a re-creation.  To avoid any possible misapprehension by members of the jury, and to ward off any possible prejudicial affect therefrom, the Court will properly instruct the jury on the nature of the tape.  *Gilbert v. Cosco, Inc.*, 989 F.2d 399, 402 (10th Cir. 1993).

Wherefore,

**IT IS ORDERED**  that *Defendant Northrop Grumman's Pre-Trial Management Motion*, filed June 17, 2004 (*Doc. 183*), *Northrop Grumman Systems Corporation's Motion In Limine to Exclude Certain Testimony Regarding the Patent on the Subject Governor*, filed May 14, 2004 (*Doc. 181*), *Northrop Grumman Systems Corporation's Motion In Limine to Exclude Certain Testimony Regarding the Alleged Mis-Location of the Pump Shift Indicator Lights,* filed May 28, 2004 (*Doc. 203*), *and Defendant Northrop Grumman Systems Corporation's Motion In Limine Regarding Videotape Re-Creation*, filed May 17, 2004 (*Doc. 188*) are hereby DENIED.

Dated June 29, 2004.

_____
SENIOR UNITED STATES DISTRICT JUDGE