IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JESSICA L. DELEON,

    Plaintiff,

vs.                                                                                                        No. CIV-02-1379 JC/RLP

NORTHROP GRUMMAN SYSTEMS
CORPORATION, and
WATEROUS COMPANY,

    Defendants,

and

NORTHROP GRUMMAN SYSTEMS
CORPORATION,

    Defendant/Third Party Plaintiff,

v.

HENRY G. DIETZ CO., INC.,

    Third Party Defendant.

## MEMORANDUM OPINION AND ORDER

    THIS MATTER comes before the Court on *Northrop Grumman Systems Corporation's Motion for Partial Summary Judgment on Plaintiff's Punitive Damages Claim (Doc. 190)*. Having reviewed the motion, the parties' submissions, and the relevant authority, the Court finds the motion not well-taken and it is, therefore, denied.

**I.**    **Background**

    Plaintiff was a volunteer firefighter in Belen, New Mexico when this cause of action arose.

On June 11, 2001, Plaintiff was among a group of firefighters responding to a fire in Belen. The fire truck used on that day was a Firecat Pumper ("Firecat") and was purchased by the Belen Fire Department in March of 1989. Defendant Waterous Company ("Waterous") manufactured the water pump and pump system installed in the Firecat. The Firecat was also equipped with an automatic transmission. The Firecat itself was designed, manufactured and marketed by Grumman Emergency Products ("GEP"), predecessor corporation to Defendant/Third Party Plaintiff Northrop Grumman Systems Corporation ("Grumman"). Grumman is financially responsible as successor corporation to now-defunct Grumman Emergency Products ("GEP").

While located in the vicinity of the fire, with Plaintiff on its catwalk, the Belen Firecat became "runaway," meaning it did not remain stationary while the operator increased engine speed to begin pumping water, but instead moved away unattended. The unexpected movement came as a result of the Firecat's engine being in "ROAD mode" when the operator believed it to be in "PUMP mode." When the Firecat began to move, Plaintiff attempted to enter the driver's side door of the moving Firecat to reach the engine shutdown switch within the cab. In her effort, Plaintiff became caught between the cab door of the moving Firecat and a pipe fence. Plaintiff suffered severe injuries.

Plaintiff's Second Amended Complaint for Personal Injury, filed November 20, 2003 (*Doc. 76*), includes claims sounding in strict liability and negligence (Counts I, II and III). Plaintiff also seeks punitive damages, asserting that Defendants' conduct was willful, reckless and wanton (Count IV). Defendant Grumman presently moves the Court for summary judgment on Plaintiff's claim for punitive damages against it.

**II.      Legal Standard**

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). For purposes of a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party. *Id*. The moving party has the initial burden of showing that there is no genuine issue of material fact. *Id.* at 256. When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying "a lack of evidence for the non movant on an essential element of the non movant's claim." *Adler v. Wal-Mart Stores, Inc*., 144 F. 3d 664, 671 ( 10th Cir. 1998).

Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson,* 477 U.S. at 248, 256. To meet this burden, the non-movant must specify evidence in the record and demonstrate the precise manner in which that evidence supports its claims. *Gross v. Burggraf*, 53 F.3d 1531, 1546 (10th Cir. 1995). An issue is material only if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 24.

**III.    Discussion**

Grumman's argument in support of its motion for summary judgment on Plaintiff's claim for punitive damages is two-fold. First, Grumman contends that no conduct on the part of its predecessor corporation, GEP, evinces the mental culpability necessary to justify an award of punitive damages; hence, there exists no such liability for successor corporation Grumman to inherit. Second,

3

Grumman contends that even if the evidence can support a finding of the necessary culpability on the part of now-defunct GEP, it would be improper to impose on successor corporation Grumman an award for damages designed wholly to punish and deter, as Grumman had no involvement in designing, manufacturing, or marketing fire trucks and did not itself exhibit the requisite mental culpability.

A.       *Culpability of Predecessor Corporation  GEP*

New Mexico law permits an award of punitive damages where a defendant's conduct is malicious, willful, reckless, wanton, fraudulent, or in bad faith.[1]  N.M. U.J.I. Civ. 13-1827.  Notably, the risk of danger posed by the particular product at issue, or the tortfeasor's particular conduct, can be considered in determining whether the conduct rises to the level of recklessness necessary to show a culpable mental state.  *Id.  See also Clay v. Ferrellgas, Inc.,* 118 N.M. 266, 269 (1994).  Count IV of Plaintiff's Second Amended Complaint alleges, "[t]he conduct of defendants described above was willful, reckless, and wanton entitling plaintiff to an award of punitive damages..." Pl's Second Am. Compl. at 6.  The terms willful, reckless, and wanton are defined as follows:  "Willful conduct is the intentional doing of a wrongful act with knowledge that the act was wrongful.  Reckless conduct is the intentional doing of an act with utter indifference to the consequences.  Wanton conduct is the doing of an act with utter indifference to or conscious disregard for a person's [rights] [safety]." *Id.*

In defense of her claim for punitive damages against Grumman, Plaintiff offers, *inter alia*, the following evidence:

---

[1]Plaintiff erroneously includes "grossly negligent" in its enumeration. Resp. at 16.  The New Mexico Supreme Court adopted a committee recommendation to exclude gross negligence from the relevant jury instruction in 1998, following the decision in *Paiz v. State Farm and Casualty Co.,* 118  N.M. 203, 213 (1994) (holding gross negligence insufficient as basis for punitive damages in contract case).  N.M. U.J.I. Civ. 13-1827 Committee commentary.

1. The Grumman governor was originally introduced by engineers from Grumman Aerospace division of Grumman Allied and was used as part of a Nozzle Pump Operation on an aerial ladder firetruck.

2. GEP later used the governor and pressure differential switch in their fire trucks, including the Belen Firecat, without conducting design analysis or evaluation of the component parts for suitability for the new application or environment. Bilyeu Depo, v. I at 46:16 to 48:13, Conlan Depo. at 29:11 to 30:25;

3. That Grumman's patenting of its governor was hastened by fear that a competitor might duplicate it. Bilyeu Depo. v. I at 47:12 to 48:13.

4. That the true inventor of the Grumman governor indicated to Grumman's patent attorney that the governor might not work. Pl's Resp., Exh. 8.

5. The pressure differential switch was developed and used by GEP in response to a problem of runaway fire trucks known to Grumman. Conlan Depo. at 29:11 to 31:9, 67:20 to 68:1; Kovach Depo. at 19:7 to 20:5, 86:24 to 87:5, 134:25 to 135:15; Bilyeu Depo. v. I at 57:11-15, v. II at 47:17-22.

6. GEP represented in its literature and promotional materials that its governor with the pressure differential switch was a fail-safe design that would prevent runaways. Pl's Resp., Exhs. 6, 7.

7. Grumman recognized the potential for an operator to make an error in the pump shift sequence and, in fact, attributed the known runaway problem primarily to operator error. Bruns Depo. at 23:5 to 24:8

8. Grumman knew that runaways continued to occur after the introduction of the green light

indicator system.  Conlan Depo. at 129:3 to 130:7; Smith Depo. at 26:11-22.

9. A Grumman employee familiar with the governor recommended on two occasions prior to the manufacture of the Belen Firecat that the governor should be rewired to the green light mechanism instead of the battery so it could not be turned on unless the transmission was in "PUMP mode."  Pl's Resp., Exh. 5; Bilyeu Depo. v. I at 91:1 to 93:9.  Such rewiring would have cost nothing while providing additional safety against runaway fire trucks.  Conlan Depo. at 107:17 to 108:25, 113:11 to 114:15, 166:9 to 167:10; Bruns Depo. at 90:22 to 92:1.

The Court finds that from this matrix of operative facts, a reasonable jury could conclude that GEP's conduct rises to the level of willful, reckless or wanton under New Mexico law.

B. *Grumman's Liability as Successor to GEP*

The Court lacks the benefit of New Mexico law directly confronting the question of whether, or under what circumstances, successor corporations should answer punitive damages claims based on the culpability of a predecessor corporation.  In the instant case, Grumman, by its own admission, "is financially responsible for any judgment that may be entered against GEP, be it compensatory *or punitive*," yet Grumman also contends that "[s]uch derivative liability in and of itself, however, is not a sufficient basis for a punitive damages claim against Northrop Grumman."  Reply at 5. (Emphasis added).  Insofar as Grumman intends to argue that the wrong corporate entity is named in Plaintiff's claim for punitive damages, perhaps implying that now-defunct GEP should have been sued directly, Grumman offers no legal authority in support of this proposition and the Court will, therefore, not entertain it.  *Primas v. City of Okla. City*, 958 F.2d 1506, 1511 (10th Cir. 1992) (holding that a party must cite to authority for any argument raised).

In support of the general proposition that it is unfair to impose liability on a successor corporation, Grumman first directs the Court to N.M. UJI 13-1827, asserting its argument that "the position taken by Northrop Grumman is clearly contemplated by New Mexico law." Reply at 5. The Court appreciates Grumman's argument but disagrees, for while the U.J.I. as drafted appears to require a finding that Northrop Grumman itself acted badly, on its face the instruction does not address the unique situation involving successor liability where, as here, the successor corporation has by admission assumed both compensatory and punitive liability of its predecessor. In addition, the Committee commentary to the U.J.I. expressly embraces the possibility of a modification to the general form of instruction when necessary. N.M. U.J.I. Civ. 13-1827 Committee commentary.

Grumman next provides the Court with cases from other jurisdictions having confronted this issue in some context[2]. Reply at 6. The decisions cited by Grumman share two chief considerations: (1) an unfairness to non-culpable defendants and (2) the underlying purposes of punitive damages, namely punishment and deterrence, not being well-served by imposition of punitive liability on a corporation which has itself exhibited no culpability. In this case, however, such concerns are mitigated by the fact that Grumman presently acknowledges that it inherited punitive liability from GEP.

Plaintiff offers another line of cases from other jurisdictions which support imposition of punitive liability on successor corporations under a variety of circumstances. Resp. at 21, 23. Those decisions are premised largely on the notion that the predecessor corporation is not extinguished,

---

[2]Curiously, both parties claim that decisions from the majority of jurisdictions determining the issue support their position. Resp. at 21 ("The vast majority of jurisdictions that have addressed the issue have held that the successor corporation is also liable for punitive damages."); Reply at 6 ("it also accords with the majority of courts that have addressed the issue.").

except as a legal fiction, but is instead embodied in the new, successor corporation. *See, e.g., Moe v. Transamerica Title Insurance Co.*, 98 Cal. Rptr. at 556.

Making no prediction regarding what position New Mexico courts might take on the more broad question, this Court adopts Grumman's express acknowledgment of its responsibility to satisfy any punitive judgment against GEP, together with the reasoning from the extra-jurisdictional cases provided by Plaintiff in which punitive liability can survive corporate merger under some circumstances,[3] to find that allowing a claim for punitive damages to proceed against Grumman is appropriate in this case.

## IV.   Conclusion

In summary, Grumman has not carried its burden. Viewing all disputed facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has produced sufficient competent summary judgment evidence from which a reasonable jury could find the requisite mental culpability to support an award of punitive damages based on the conduct of GEP. The Court further finds any such punitive liability may be properly visited upon Grumman. Therefore, Grumman's motion is denied.

Wherefore,

**IT IS ORDERED** that *Northrop Grumman Systems Corporation's Motion for Partial Summary Judgment on Plaintiff's Punitive Damages Claim*, filed May 17, 2004 (*Doc. 190)* is denied.

Dated July 14, 2004.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[3]Particularly where there is evidence that the successor corporation had knowledge of a possible hazard and, arguably, did not properly guard against it. *See, e.g., Wussow v. Commercial Mechanisms, Inc.,* 293 N.W. 2d. 897 (Wis. 1980).