# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JESSICA L. DELEON,

    Plaintiff,

vs.                                                                           No. CIV-02-1379 JC/RLP

NORTHROP GRUMMAN SYSTEMS
CORPORATION, and
WATEROUS COMPANY,

    Defendants,

and

NORTHROP GRUMMAN SYSTEMS
CORPORATION,

    Defendant/Third Party Plaintiff,

v.

HENRY G. DIETZ CO., INC.,

    Third Party Defendant.

## **MEMORANDUM OPINION AND ORDER**

      THIS MATTER comes before the Court on *Defendant Waterous Company's Motion for Summary Judgment on Plaintiff's Claims for Strict Liability and Negligence* ("Motion for Summary Judgment"), filed May 5, 2004 (*Doc. 167*); Defendant Waterous' *Motion to Strike Portions of Plaintiff's Response in Opposition to Waterous Company's Motion for Summary Judgment on Plaintiff's Claims for Strict Liability and Negligence* ("Motion to Strike"), filed June 18, 2004 (*Doc. 237*), and *Plaintiff's Alternative Cross Motion for Summary Judgment Against Defendant Northrop*

*Grumman* ("Cross Motion") (*Doc. 201*).  Having reviewed the motions, the parties' submissions, and the relevant authority, the Court finds the Motion for Summary Judgment[1] and the Motion to Strike not well-taken and they are, therefore, DENIED.  The Court further finds Plaintiff's Cross Motion moot and it is DISMISSED as such.

## I.     Background

Plaintiff was a volunteer firefighter in Belen, New Mexico when this cause of action arose.  On June 11, 2001, Plaintiff was among a group of firefighters responding to a fire in Belen.  The fire truck used on that day was a Firecat Pumper ("Firecat"), manufactured by Defendant/Third Party Plaintiff Northrop Grumman Systems Corporation ("Grumman")[2] and purchased by the Belen Fire Department in March of 1989.  Defendant Waterous Company ("Waterous") manufactured the Firecat's water pump system and green "OK To Pump" light system, designed to signal to the operator of the firetruck whether a shift out of "ROAD mode" and into "PUMP mode" had been successfully completed.  The Firecat was also equipped with a split-shaft, automatic transmission.

While located in the vicinity of the fire, with Plaintiff on its catwalk, the Firecat became "runaway," meaning it did not remain stationary while the operator increased engine speed to begin pumping water, but instead moved away unattended.  The unexpected movement came as a result of the Firecat's engine being in "ROAD mode" when the operator believed it to be in "PUMP mode."

---

[1]This Memorandum Opinion and Order follows the Court's oral ruling denying Waterous' Motion for Summary Judgment, issued in open Court on Friday July 16, 2004.  At that time, the Court also denied Waterous' Request For Hearing, filed June 24, 2004 (*Doc. 250*).

[2]The Court notes that Defendant Northrop Grumman Systems Corporation did not itself manufacture the subject Firecat or any of its components.  Grumman is named in the Complaint and is financially responsible for any judgment that may be entered as successor corporation to now-defunct Grumman Emergency Products ("GEP"), which was involved in designing, manufacturing, and marketing of the subject Firecat.

Plaintiff attempted to enter the driver's side door of the moving Firecat to reach the engine shutdown switch within the cab.  In her effort, Plaintiff became caught between the cab door of the moving Firecat and a pipe fence.  Plaintiff suffered severe injuries.

Plaintiff's Second Amended Complaint for Personal Injury, filed November 20, 2003 (*Doc. 76*), includes claims sounding in strict liability and negligence (Counts I, II and III).  Plaintiff also seeks punitive damages, asserting that Defendants' conduct was willful, reckless and wanton (Count IV).  Defendant Waterous presently moves the Court for summary judgment on Plaintiff's claims for strict liability and negligence against it.

## II.  Legal Standard

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  For purposes of a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party.  *Id*.  The moving party has the initial burden of showing that there is no genuine issue of material fact.  *Id.* at 256.  When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying "a lack of evidence for the non movant on an essential element of the non movant's claim." *Adler v. Wal-Mart Stores, Inc*., 144 F. 3d 664, 671 ( 10th Cir. 1998).

Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts

3

showing a genuine issue for trial. *Anderson,* 477 U.S. at 248, 256. To meet this burden, the non-movant must specify evidence in the record and demonstrate the precise manner in which that evidence supports its claims. *Gross v. Burggraf*, 53 F.3d 1531, 1546 (10th Cir. 1995). An issue is material only if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 24

### III.     Discussion

Waterous moves the Court for summary judgment on Plaintiffs' claims for strict liability and negligence on several grounds. First, Waterous argues that sufficient, undisputed and unrebutted material facts exist to warrant summary dismissal of Plaintiff's claims of defect against it. Specifically, Waterous identifies three different categories of engine torque and asserts as fact that only one of the three types of torque could possibly have contributed to Plaintiff's accident under her own theory of the case. Waterous then concludes that not only is Plaintiff's evidence pertaining to the remaining two types of torque irrelevant and inadmissible, but summary judgment disposition in its favor is appropriate for Plaintiff's lack of competent evidence on what Waterous has identified as the only relevant type of torque.

Second, Waterous argues that Plaintiff's claims asserting failure to adopt alternative design measures to address known pump shift hazards are irrelevant to Plaintiff's claims against Waterous because Plaintiff's proposed design alternatives involve changes to component parts on the Belen Firecat not manufactured by Waterous.

Third, Waterous argues that Plaintiff's evidence supporting her theory that the green "OK To Pump" light system is defectively designed and unreliable is unsupportable, irrelevant and inadmissible. In this vein, Waterous argues that Plaintiff offers no evidence that the product left its hands in a defective condition, as the Belen truck's green light system did not display any malfunction

4

either before or after Plaintiff's accident.

Plaintiff's Response reiterates her theory that Waterous failed to implement a design solution that would have eliminated a known risk to firefighters from a foreseeable hazard caused by forseeable misuse. Plaintiff offers ample evidence that Waterous acknowledged a dangerous situation involving pump shift transfer failure causing runaways. Plaintiff contends that Waterous' liability arises from its decision to introduce the green light system to guard against a known hazard instead of undertaking to redesign its system and, more particularly, that Waterous continued to rely on the green light system in the face of industry-wide awareness and internal company discussions recognizing that the system was not, in fact, stopping runaways. It is this failure to redesign the system to include a feature that would prevent a runaway in the event of a failed pump shift system transfer that forms the basis for Plaintiff's claim. Additionally, Plaintiff contends that Waterous failed to adequately warn of the known risk of injury and provided deficient instructions for use of its pump shift system.

Indeed, Plaintiff offers evidence that Waterous received continuous information from the time it introduced the green light in 1976 through the time it manufactured the Belen Firecat in 1989. *See, e.g.,* Doc. 187, Exh. 11. Continued occurrences of runaway trucks after the introduction of the green light system, which was itself implemented to address a known problem involving runaway trucks, is evidence from which a reasonable jury could infer that the system did not work to effectively prevent runaway firetrucks. Doc. 187, Exh. 23. Further, the Court notes that under Plaintiff's theory of the case, the product indeed left Waterous in a defective condition; the potential for a runaway firetruck was allegedly inherent in the design of the pump shift and green light systems and Waterous was aware of it. Doc. 187, Exh. 14. Such defect was, therefore, present in each system as it left the

hands of Waterous in exactly the way it was intended to leave.  Plaintiff alleges that it is the *potential* for a mis-shift, followed by insufficient warning thereof, which can culminate in a runaway firetruck, that constitutes defective design.  That potential was present every time the Belen Firecat was shifted from "ROAD mode" to "PUMP mode."  Thus, it is unnecessary for her to offer evidence showing that the green light exhibited failures other than the alleged failure on the day of the incident in question.

### III.    Conclusion

In summary, Plaintiff has offered sufficient evidence from which a reasonable jury could find liability on the part of Waterous and disposition of these issues on summary judgment is not warranted.  Further, in light of the pre-trial evidentiary rulings in this case and this Memorandum Opinion and Order, the Court will deny Waterous' Motion to Strike.  Finally, as a result of the above rulings, Plaintiff's Cross Motion is rendered moot.

Wherefore,

**IT IS ORDERED** that *Defendant Waterous Company's Motion for Summary Judgment on Plaintiff's Claims for Strict Liability and Negligence*, filed May 5, 2004 (*Doc. 167*) is DENIED.

**IT IS FURTHER ORDERED** that Defendant Waterous' *Motion to Strike Portions of Plaintiff's Response in Opposition to Waterous Company's Motion for Summary Judgment on Plaintiff's Claims for Strict Liability and Negligence*, filed June 18, 2004 (*Doc. 237*) is DENIED.

**IT IS FURTHER ORDERED** that *Plaintiff's Alternative Cross Motion for Summary Judgment Against Defendant Northrop Grumman* (*Doc. 201*) is DISMISSED AS MOOT.

DATED July 23, 2004.

_____
SENIOR UNITED STATES DISTRICT JUDGE